UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Misc. No. 06-125 (RBW) |
| ) | |
| I. LEWIS LIBBY ) | |

**MOTION OF JUDITH MILLER TO QUASH SUBPOENA
AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Judith Miller, through undersigned counsel, respectfully moves this Court to quash the March 14, 2006 subpoena *duces tecum* (the "March 14 subpoena") served upon her by defendant I. Lewis "Scooter" Libby. With respect to the few responsive documents in Ms. Miller's possession, described below, the subpoena is facially deficient under Rule 17(c) of the Federal Rules of Criminal Procedure because it is not specific in its requests, and it seeks information that is irrelevant to the instant case and would be inadmissible at trial. Moreover, the subpoena impinges on personal and sensitive professional contacts that are referenced in the documents covered.

## BACKGROUND

This matter arises from the federal grand jury investigation into the leak of Valerie Plame's identity as a CIA employee, and ensuing indictment of Mr. Libby on charges of perjury, obstruction of justice, and false statements. In the course of the grand jury's investigation, Ms. Miller was served with two grand jury subpoenas.[1]

---

[1] Pertinent here, the grand jury sought testimony and documents relating to conversations Ms. Miller may have had with a government official concerning Ms. Plame or Iraqi efforts to obtain uranium.

Ms. Miller testified twice before the grand jury, on September 30 and October 12, 2005. She also produced to the grand jury copies of her reporter's notes taken during the three contacts she had with Mr. Libby at which Ms. Plame was mentioned. The contacts took place on June 23, July 8 and July 12, 2003. In addition to these notes, referencing the full conversations with Mr. Libby on those dates, Ms. Miller also produced to the grand jury all unattributed passages in the notebooks that referenced either Mr. Libby, Ms. Plame, or her husband Joseph Wilson, whether by name or otherwise, along with any surrounding passages that might provide context for those references. (*See* Exh. A, Bennett Decl. ¶¶ 4-6.)

On March 14, 2006, Mr. Libby served a Rule 17(c) subpoena *duces tecum* on Ms. Miller seeking a broad, unspecific range of documents. (Exh. B, March 14 subpoena.) Pertinent here, the material sought by Mr. Libby includes her complete unredacted reporter's notebooks, appointment calendars, and telephone records for a specified time period of nearly six weeks during the summer of 2003. Mr. Libby can make no showing that the broad categories of material he seeks is relevant and would be admissible at trial, as required by Rule 17(c). Moreover, the requests encompass personal and sensitive professional references, quite apart from any conceivable issues that could be raised appropriately in the instant case. The subpoena, therefore, should be quashed.

## ARGUMENT

This Court may quash a Rule 17(c) subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. Proc. 17(c)(2). "Every subpoena must be a 'good faith effort to . . . obtain evidence,' and the district court may ensure that rule 17(c) is used only to that end through the court's power to quash or modify subpoenas." *United States v. Arditti*,

2

955 F.2d 331, 345 (5th Cir. 1992)(citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-220 (1951)).

It is well settled that Rule 17(c) is not intended to provide a means of general discovery. *Bowman Dairy Co.*, 341 U.S. at 219; *Arditti*, 955 F.2d at 345; *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984). The purpose of Rule 17(c) is solely to enable a defendant to obtain and inspect evidentiary material prior to trial. *United States v. Nixon*, 418 U.S. 683, 698-699 (1974). As such, "courts must be careful that rule 17(c) is not turned into a broad discovery device." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)(quoting *United States v. Cuthbertson*, 630 F.2d 139, 146 (3rd Cir. 1980)).

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court adopted a multi-prong test for a district court assessing the propriety of a Rule 17(c) subpoena. Namely, the party issuing the subpoena must show:

> (1) that the documents are evidentiary and relevant;
> (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;
> (3) that the party can not otherwise properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
> (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699-700. Thus, the defendant "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.*

The March 14 subpoena demands production of eight broad and unspecific categories of documents. While Ms. Miller continues to diligently search for responsive documents, to date she only has located three categories of responsive material: her reporter's

3

notes, work-related phone records, and an appointment calendar.[2] The notebooks are responsive to Requests 1, 3 and 6 (the latter two of which overlap in this instance with Request 1, covering her reporter's notes).[3] The calendar and phone logs are responsive to Request 2.[4]

Accordingly, with respect to those documents, Ms. Miller hereby respectfully makes the following objections to the March 14 subpoena and requests that the Court grant her motion to quash.

I.  **The Court Previously Denied Mr. Libby's Attempt To Obtain Material Similar To That Sought In The March 14 Subpoena, Finding It Immaterial To Any Claim Of Defense.**

To begin with, in support of the instant motion to quash the law of the case is relevant in that the Court has already denied Mr. Libby's attempt, pursuant to Federal Rule of

---

[2] At this time, Ms. Miller cannot locate the original notebook containing notes of her June 23, 2003 conversation with Mr. Libby. However, counsel is in possession of a true and complete color copy of the notebook.

[3] Request 1 seeks "[t]he complete unredacted original notebooks from which copies of certain pages were produced to the grand jury or Office of Special Counsel in this matter." Request 3 seeks "[a]ll documents prepared or received by Ms. Miller prior to July 14, 2003 that refer to the wife of former Ambassador Joseph Wilson, whether by name or otherwise." The relevant portion of Request 6 seeks "[a]ll documents prepared at any time by you, or based upon information received from you, that refer or purport to describe any part of any conversation between you and I. Lewis Libby on June 23, July 8 or July 12, 2003, or any telephone calls between you and I. Lewis Libby at any time during June or July 2003."

In discussion with counsel prior to filing the instant motion, counsel for Mr. Libby offered to limit the scope of the subpoena's Requests 3, 4 & 8, to a responsive start date of January 1, 2003. The limitation does not remove the fact that the information sought is unspecific and irrelevant, impinges on personal and sensitive professional interests, and would not be admissible at trial.

[4] Request 2 seeks "[a]ll appointment calendars, telephone logs and records of telephone calls placed or received by your during the period June 7 to July 14, 2003."

4

Criminal Procedure 16 and the *Brady* doctrine, to discover material very similar to that sought by the March 14 subpoena. In denying the earlier discovery request, the Court noted:

> the defendant was not entitled to any documents, other than those already produced [by the Special Counsel], which related to "knowledge by any news reporter or employee of a news organization of Valerie Plame Wilson's possible affiliation with the CIA or her role in connection with Joseph Wilson's trip to Niger prior to July 14, 2003," or documents containing "any mention of Valerie Plame Wilson in any communication between a news reporter and a government official, another news reporter, an employee of a news organization, or any other person prior to July 14, 2003." In so ruling, the Court concluded that *the documents which the government has not produced are not material to the preparation of the defense as they do not in any way relate to conversations either the defendant had with other news reporters or that Judith Miller . . . had with other news reporters or other government officials.*

(Memorandum Opinion of March 10, 2006 at n. 3)(emphasis added). Similarly, the material now sought by Mr. Libby pursuant to Rule 17(c) (aside from information already produced by Ms. Miller to the grand jury, which she agrees should be produced to the defense),[5] does not relate to any conversations between Mr. Libby and any news reporters, or to conversations Ms. Miller had with any other individual with respect to either Mr. Libby, Ms. Plame, or her husband Joseph Wilson. (Exh. A, Bennett Decl. ¶ 7.)

Consistent with the Court's ruling that similar documents sought by Mr. Libby were immaterial to any defense pursuant to Rule 16 and *Brady*, it follows that Ms. Miller's notes of discussions with other sources about issues completely unrelated to this matter should not be

---

[5] Ms. Plame and her husband were mentioned briefly by Mr. Libby during three lengthier conversations he had with Ms. Miller. As noted above, Ms. Miller has already produced to the grand jury true copies of her handwritten notes that reflect the entirety of these conversations with Mr. Libby, regardless of subject. We understand Special Counsel has already produced this material to Mr. Libby

5

deemed relevant, let alone admissible pursuant to Rule 17(c). Mr. Libby should not be allowed to use Rule 17(c) to skirt the Court's denial of discovery under Rule 16.[6]

## II. The Subpoenaed Documents Are Irrelevant To The Defense And Would Be Inadmissible At Trial.

Pursuant to the *Nixon* test, Mr. Libby must show that the documents sought are both relevant and admissible. "The fact that they are *potentially* relevant or *may* be admissible is not sufficient." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005)(citing *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965))(emphasis added). As such, Rule 17(c) is considerably narrower than discovery rules permitting discovery of material that, although not admissible, could *lead* to the discovery of admissible evidence. "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In Re Sealed Case*, 121 F.3d 729, 754-755 (D.C. Cir. 1997)(citations omitted). With respect to admissibility, "the document sought must *at that time*" be admissible as evidence. *Marchisio*, 344 F.2d at 669 (emphasis added).

The limiting requirements of Rule 17(c), as set forth in *Nixon*, take on added importance in this case. Given the confidential nature of the material covered by the subpoena, which includes personal references and contacts, as well as sensitive information obtained from Ms. Miller's journalistic sources other than Mr. Libby in matters completely unrelated to the instant case, the Court should be examine critically the arguments Mr. Libby may put forth with

---

[6] While in some cases material that is unavailable to a defendant under Rule 16 may be available through Rule 17(c), this is only the case when the material is both relevant and admissible. *Bowman Dairy*, 341 U.S. at 219-220. "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Id.* at 220.

6

respect to relevance in the wake of the instant motion. As the Special Counsel has observed, this perjury and obstruction case involves relatively narrow issues. Accordingly, the Court should evaluate Mr. Libby's attempts at discovery "[a]gainst the backdrop of the limited charges in this indictment – that defendant lied to the grand jury and the Federal Bureau of Investigation about his acquisition and disclosures to the media of information concerning Valerie Plame Wilson's employment by the Central Intelligence Agency." (Government's Response to Defendant's Third Motion to Compel at 5.) There is absolutely nothing in the subpoenaed materials in Ms. Miller's possession, aside from those already produced to the Special Counsel, that go to Mr. Libby's contacts with Ms. Miller or other journalists, or her contacts with other individuals pertinent to this case – let alone to Mr. Libby's guilt or innocence of perjury and obstruction.

The material redacted from Ms. Miller's notebooks before production to the Special Counsel, and now sought by the defense, comprises her personal notes and notes of interviews with confidential sources *other* than Mr. Libby regarding topics *unrelated* to the instant case. (Exh. A, Bennett Decl. ¶ 7.) Similarly, production of Ms. Miller's telephone records and appointment calendars would serve to divulge the identity of solely personal contacts and professional confidential sources used by Ms. Miller in her work.[7] This information could not be used as evidence at trial, and is otherwise unrelated to the facts surrounding the charges

---

[7]   In *New York Times Co. v. Gonzales*, the newspaper opposed the government's attempt to obtain reporters' telephone records covering a period of several weeks. 382 F. Supp.2d 457 (S.D.N.Y. 2005)(Sweet, J.), *appeal docketed*, No. 05-2639-cv (2nd Cir. May 31, 2005). As the district court recognized in that case, the telephone records at issue would not only reveal confidential conversations with sources unrelated to the case, but would also reveal unrelated personal calls. *Id.* at 470. The court quashed the subpoena on First Amendment grounds and recognized the intrusiveness of the subpoena, which if enforced would "capture a substantial number of records of confidential communications that are irrelevant to the investigation at issue in this case." *Id.* at 511.

pending against Mr. Libby.[8] There is, in short, no basis pursuant to Rule 17(c) to require production. *See Nixon*, 418 U.S. at 700 (defendant must show that the "application is made in good faith and is not intended as a general 'fishing expedition.'").

### III. The Subpoena Fails To Identify The Material Sought With The Requisite Specificity.

Even if *some* portion of the subpoenaed materials could be deemed relevant, a proposition we believe is highly dubious at best, *Nixon* requires that material sought pursuant to a Rule 17(c) subpoena be described with adequate specificity. The "specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Arditti*, 955 F.2d at 345 (citing *Nixon*, 418 U.S. at 700). Accordingly, a subpoena should be quashed "[i]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but *merely hopes that something useful will turn up*." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D.Fla. 1991)(quoting *Bowman Dairy Co.*, 341 U.S. at 220)(emphasis added). Apparently, that is exactly what the defense hopes will occur here.

The March 14 subpoena fails to adequately identify what is sought from Ms. Miller's notes, telephone records, and calendars. Mr. Libby's failure to set forth "with sufficient specificity the evidentiary nature of the requested materials . . . forc[es] the court to speculate as

---

[8] Ms. Miller is willing to produce the disputed material to the Court for *in camera* review to aid the Court in its analysis prior to ruling on this motion, if necessary. *United States v. Nixon*, 777 F.2d 958, 969 (5th Cir. 1985)(affirming district court's refusal to order production of government files under Rule 17(c) because *in camera* inspection revealed that materials were not relevant); *Cuthbertson*, 651 F.2d at 195 (reversing order releasing materials because district court did not use its *in camera* review to "evaluat[e] the material against the evidentiary requirement of rule 17(c)"); *United States v. Poindexter*, 732 F. Supp. 135, 138, 141 (D.D.C. 1990) (ordering disclosure of certain documents after briefing by the parties and *in camera* review to determine relevancy under Rule 17(c)).

to the specific nature of their contents and its relevance." *Arditti*, 955 F.2d at 345-46.[9] This alone presents adequate grounds to quash. *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002)(affirming order quashing subpoena for records where defendant could not specify what the requested items contained, or even if the requested items existed).[10]

By seeking in unspecified fashion "all" documents falling within a nearly six week time frame, Mr. Libby is apparently casting his net wide "merely hop[ing] that something useful will turn up." *Noriega*, 764 F. Supp. at 1493; *see also Morris*, 287 F.3d at 991. This is not the intended purpose of Rule 17(c).

## CONCLUSION

For the foregoing reasons, Ms. Miller respectfully requests that the Court grant her motion to quash.

Dated: April 18, 2006

Respectfully submitted,

By: _____
Robert S. Bennett (D.C. Bar No. 112987)
Saul M. Pilchen (D.C. Bar No. 376107)
N. Nathan Dimock (D.C. Bar No. 487743)
SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000
Counsel for Judith Miller

---

[9] *See also In Re Sealed Case*, 121 F.3d at 754-755; *United States v. Segal*, 276 F. Supp. 2d 896, 899-901 (N.D. Ill. 2003).

[10] *See also Segal*, 276 F. Supp. 2d at 899-901 (N.D. Ill. 2003) (quashing subpoena because defendant could only guess about what the requested documents would show); *United States v. Jackson*, 155 F.R.D. 664, 668-69 (D. Kan. 1994) (requests employing terms "any and all documents" or "including, but not limited to" were not sufficiently specific).

# EXHIBIT A

Misc. No. 06-125 (RBW)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                )    Misc. No. 06-125 (RBW)<br>)<br>I. LEWIS LIBBY                  )<br>) | |

## DECLARATION OF ROBERT S. BENNETT

Pursuant to 28 U.S.C. § 1746, Robert S. Bennett states as follows:

1. I am over 18 years of age, competent to testify, and have personal knowledge of the matters and issues included in this declaration.

2. I am a partner in the Washington D.C. office of Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden, Arps"), and licensed to practice law in the District of Columbia.

3. On or about December 2004, Judith Miller retained me and my law firm to defend her in a civil contempt proceeding in the United States District Court for the District of Columbia. The contempt proceeding arose from the grand jury investigation into the leak of Valerie Plame's identity as a CIA employee. Ms. Miller was identified as a witness in that investigation because as a journalist she had multiple professional contacts with I. Lewis ("Scooter") Libby about that subject and related issues. By the time I was retained, Ms. Miller had been held in contempt by the Court for her refusal, on First Amendment and common law grounds, to testify and produce reporter's notes sought by the grand jury. In July 2005, Ms. Miller was incarcerated in the Alexandria Detention Center after the U.S. Supreme Court declined to hear her case. I was involved in all aspects of Ms. Miller's representation and continue to represent her.

4. In the course of my representation of Ms. Miller, I engaged in conversations with the Special Counsel, Patrick Fitzgerald, to determine whether the grand jury subpoenas served on Ms. Miller required production of all her notes or only the pertinent sections that expressly referenced Mr. Libby, Ms. Plame, or her husband Joseph Wilson, whether by name or otherwise. During those discussions, the Special Counsel agreed that I and my legal team could review the notes and produce to the grand jury only the relevant passages.

5. Accordingly, I and my colleagues Saul M. Pilchen and N. Nathan Dimock debriefed Ms. Miller about her notes and recollection of her contacts with Mr. Libby. Pursuant to the agreement with the Special Counsel, Messrs. Pilchen and Dimock closely reviewed Ms. Miller's notes, and identified the portions that should be produced.

Following their review, I also reviewed the notes to ensure that all relevant passages were identified for production to the grand jury.

6. On behalf of Ms. Miller, I produced to the grand jury redacted copies of her notes, consisting of all passages that referenced either Mr. Libby, Ms. Plame, or Mr. Wilson, by name or otherwise, along with any surrounding passages might that provide context for those references. This included the entirety of the three conversations Ms. Miller could recall having with Mr. Libby – on June 23, July 8, and July 12, 2003.

7. The redacted passages in Ms. Miller's notes, which were not produced, comprise to the best of my knowledge her personal notes and notes of interviews with sources other than Mr. Libby regarding topics unrelated to Mr. Libby, Ms. Plame, or Mr. Wilson. The unattributed references in the notes to Mr. Libby, Ms. Plame, or Mr. Wilson, which were produced to the grand jury, are to my knowledge not tied to any identifiable source.

8. I declare under penalty of perjury that the foregoing is true and correct.

_____*[signature]*_____ April 18, 2006
                Robert S. Bennett        Date

# EXHIBIT B

Misc. No. 06-125 (RBW)

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

# United States District Court

For The _____ DISTRICT OF Columbia

United States of America

v.

I. Lewis Libby

**SUBPOENA IN A CRIMINAL CASE**

CASE NUMBER: 05-394 (RBW)

TO:

Judith Miller

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE | COURTROOM |
|---|---|
| United States Courthouse<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Courtroom 5 |
| | DATE AND TIME |
| | April 7, 2006 2:30 p.m. |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See attached.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT<br>NANCY MAYER-WHITTINGTON<br>(By) Deputy Clerk | DATE<br>March 14, 2006 |
|---|---|

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

William Jeffress, Esq., Baker Botts L.L.P., 1299 Pennsylvania Ave., N.W., Washington, D.C. 20004-2400, (202) 639-7700

### Subpoena to Judith Miller

1. The complete unredacted original notebooks from which copies of certain pages were produced to the grand jury or Office of Special Counsel in this matter.

2. All appointment calendars, telephone logs and records of telephone calls placed or received by you during the period June 7 to July 14, 2003.

3. All documents prepared or received by you prior to July 14, 2003 that refer to the wife of former Ambassador Joseph Wilson, whether by name or otherwise.

4. All documents, whenever prepared or received, indicating or suggesting that any employee or agent of The New York Times (including but not limited to you and Nicholas Kristof) was aware, prior to July 14, 2003, that the wife of former Ambassador Joseph Wilson was employed by the CIA.

5. All documents reflecting or pertaining to your conversation with George Freeman concerning Valerie Plame, described in the Vanity Fair article published in March 2006 under the byline of Marie Brenner, in which you are reported to have told Mr. Freeman, inter alia, that you talked to many people in the government about Ms. Plame before and after Novak's article.

6. All documents prepared at any time by you, or based upon information received from you, that refer or purport to describe any part of any conversation between you and I. Lewis Libby on June 23, July 8 or July 12, 2003, or any telephone calls between you and I. Lewis Libby at any time during June or July 2003. This request includes but is not limited to drafts of an article entitled "A Personal Account: My Four Hours Testifying in the Federal Grand Jury Room" published October 16, 2005

7. All documents, whenever prepared or received, reflecting or referring to any request or recommendation by you, prior to July 14, 2003, to Jill Abramson or any other employee or agent of The New York Times, to pursue a news story or investigation relating to former Ambassador Joseph Wilson's trip to Niger or his claims concerning that trip.

8. All documents reflecting communications by you concerning former Ambassador Joseph Wilson prior to July 14, 2003, with any of the following persons: Ari Fleischer, Mark Grossman, Eric Edelman, Bob Grenier, Cathy Martin, Joseph Wilson, George Tenet and Bill Harlow.

As used in this subpoena, the term "documents" means written or recorded materials of any kind and electronically stored information. The term includes, but is not limited to, handwritten and typed notes and drafts, e-mails whether stored electronically or in hard copy, and video and audio recordings.

## CERTIFICATE OF SERVICE

I, N. Nathan Dimock hereby certify that a true and correct copy of the foregoing "Motion of Judith Miller to Quash Subpoena and Supporting Memorandum of Points and Authorities" and attached exhibits were this 18th day of April, 2006, filed by and with the Court and served by causing a true and correct copy to be delivered by facsimile and by first-class mail, postage prepaid to the following:

>William H. Jeffress, Jr.
>Alex Joseph Bourelly
>Alexandra M. Walsh
>BAKER BOTTS, LLP
>The Warner Building
>1299 Pennsylvania Avenue, N.W.
>Washington, DC 20004
>Facsimile: 202-585-1087
>
>Joseph A. Tate
>DECHERT LLP
>2929 Arch Street, Cira Centre
>Philadelphia, PA 19104
>Facsimile: 215-994-2222
>
>Theodore V. Wells, Jr.
>James Lewis Brochin
>PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
>1285 Avenue of the Americas
>New York, NY 10019
>Facsimile: 212-373-2217
>
>John DeWitt Cline
>JONES DAY
>555 California Street
>San Francisco, CA 94104
>Facsimile: 415-875-5700
>
>*Counsel for Defendant*

Honorable Patrick J. Fitzgerald
   *Special Counsel*
OFFICE OF THE UNITED STATES ATTORNEY
    NORTHERN DISTRICT OF ILLINOIS
Dirksen Federal Building
219 South Dearborn St.
Chicago IL 60604
Facsimile: 312 886-0657

Debra R. Bonamici
OFFICE OF THE SPECIAL COUNSEL
Dirksen Federal Building
219 South Dearborn St.
Room 500
Chicago IL 60604
Facsimile: 312 886-0657

Kathleen Kedian
   *Deputy Special Counsel*
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W., Room 9422
Washington, DC 20005
Facsimile: 202 514-3003

Peter Robert Zeidenberg
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W., Room 12-405
Washington, DC 20005
Facsimile: 202 514-3003

*Counsel for the United States*

_____
N. Nathan Dimock
SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Misc. No. 06-125 (RBW) |
| ) | |
| I. LEWIS LIBBY ) | |

### ORDER

Currently before the Court is non-party Judith Miller's Motion to Quash the March 14, 2006 subpoena *duces tecum* served upon her by Defendant. After review and consideration of the papers filed by the parties and argument made in open court on May 5, 2006, and for reasons stated in open court on same date, it is hereby this ___ day of May, 2006,

**ORDERED** that the Motion is GRANTED.

**SO ORDERED.**

Dated: _____

_____
Reggie B. Walton
United States District Judge